**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

FIRST TENNESSEE BANK NATIONAL
ASSOCIATION,

                **Plaintiff,**

v.                                    **Case No. 2:10-cv-02513-JPM-cgc**

REPUBLIC MORTGAGE INSURANCE
COMPANY and REPUBLIC MORTGAGE
INSURANCE COMPANY OF NORTH
CAROLINA,

                **Defendants.**

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL RESPONSES TO INTERROGATORIES AND DOCUMENT REQUESTS**

---

        Before the Court is Plaintiff First Tennessee Bank National Association's ("First Tennessee")

Motion to Compel Responses to Interrogatories and Document Requests (Docket Entry ("D.E.")

#46).  The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for

determination.  (D.E. #47).  For the reasons set forth herein, First Tennessee's Motion is hereby

GRANTED IN PART AND DENIED IN PART.

      **I.  Introduction**

        On July 9, 2010, First Tennessee filed its Complaint against Defendants Republic Mortgage

Insurance Company and Republic Mortgage Insurance Company of North Carolina (collectively

"RMIC").  First Tennessee's allegations arise from an insurance policy—Master Policy No. 48873

("Policy")—issued by RMIC to First Tennessee with an effective date of June 1, 1983.  (Compl. ¶

1

8).  The Policy is a flow mortgage insurance policy which insures First Tennessee against default in connection with individual mortgage loans it generates or acquires.  (Compl. ¶ 10).  Under the Policy, the loans are not insured as a pool or group but on a loan-by-loan basis.  (Id.).  First Tennessee asserts that the Policy of mortgage insurance is critical to its business and its investors to protect against the risk of default by borrowers.  (Compl. ¶¶ 13-15).

First Tennessee further alleges that, as the United States economy has experienced substantial weakness in recent years, including losses in employment and decreases in home values, there have been a significant increase in loan defaults and foreclosures nationwide.  (Compl. ¶¶ 25-26).  First Tennessee claims that before the economic downturn, RMIC honored its coverage obligations on an overwhelming percentage of claims.  (Compl. ¶ 28).  However, after the economic downturn, First Tennessee argues that RMIC "decided to adopt a policy and practice to break the coverage promises it made in the Policy to salvage and improve its financial position at the expense of its insured."  (Compl. ¶ 29).  As part of this new policy and practice, First Tennessee alleges that RMIC "unilaterally rescinded millions of dollars of coverage for hundreds of loans insured" without basis and in violation of the Policy.  (Compl. ¶¶ 27-49).

Based upon these allegations, First Tennessee's Complaint contains five counts.  In Counts I and II, First Tennessee alleges that RMIC violated the Policy's terms and breached its duty of good faith and fair dealing by rescinding coverage based on inadequate evidence of misrepresentation, immaterial misrepresentations by borrowers, or both.  (Compl. ¶¶ 32, 39, 50-57).  In Counts III and IV, First Tennessee alleges that RMIC violated the Policy's terms and breached its duty of good faith and fair dealing by rescinding coverage before First Tennessee submitted claims to RMIC.  (Compl. ¶¶ 68-86).  In Count V, First Tennessee seeks a declaratory judgment that, inter alia,

"RMIC may not rescind coverage before a Claim is submitted under the Policy and RMIC must reinstate coverage for all loans where it rescinded coverage before a Claim was presented." (Compl. ¶ 88).

On September 24, 2010, RMIC filed a Motion to Dismiss Counts II-V of Plaintiff's Complaint. (D.E. #23). The District Court entered its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Counts II-V of Plaintiff's Complaint on February 25, 2011. (D.E. #52). In the Order, the District Court initially considered the threshold issue of which state's law governs First Tennessee's claims, as First Tennessee contends that Texas law applies and RMIC contends that Tennessee law applies. (Feb. 25, 2011 Order at 4-5). The District Court determined that it need not decide which state's law applies at that stage of the proceedings and instead analyzed First Tennessee's claims under both Tennessee and Texas law. (Feb. 25, 2011 Order at 5). Ultimately, the District Court dismissed Count III because the Policy does not prohibit pre-claim rescissions but did not dismiss the remaining Counts. (Feb. 25, 2011 Order at 5-11).

On February 9, 2011, First Tennessee filed the instant Motion requesting that the Court compel RMIC to respond to First Tennessee's First Set of Interrogatories ("Interrogatories") and First Tennessee's First Request for Production of Documents ("Requests for Production"). RMIC responded on March 9, 2011 that First Tennessee's Motion should be denied because the categories of documents at issue are not relevant to any of the claims in this case, because RMIC has already produced certain discovery, and because RMIC does not have certain responsive documents that First Tennessee requests. On March 30, 2011, First Tennessee filed its Reply providing further support for its Motion. On April 14, 2011, a hearing was held before the undersigned on First Tennessee's Motion, at which time the Court took the Motion under advisement.

## II.  Analysis

Rule 26 of the Federal Rules of Civil Procedure provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and locations or persons who know of any discoverable matter.  Fed. R. Civ. P. 26(b)(1).  Further, for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Id.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  Id.

With respect to First Tennessee's remaining breach-of-contract claims in Count I, the essential elements under Tennessee law include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract.  See ARC Lifemed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).  Likewise, under Texas law, a breach-of-contract claim requires (1) the existence of a valid contract, (2) that plaintiff performed or tendered performance, (3) that the defendant breached the agreement, and (4) that the plaintiff was damaged as a result of the breach.  See Landrum v. Davenport, 616 S.W.2d 359, 361 (Tex. Ct. App. 1981).

With respect to First Tennessee's claims of breach of the duty of good faith and fair dealing in Counts II and IV, the District Court has already determined that Texas law and Tennessee law differ on this point.  Tennessee law does not recognize such a claim as "a cause of action in and of itself."  See Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000).  However, Texas courts have "long recognized a common law duty of good faith and fair dealing in insurance

4

relationships." <u>Rice v. Metro. Life Ins. Co.</u>, 324 S.W.3d 660, 672 (Tex. Ct. App. 2010); <u>see also</u>

<u>Viles v. Sec. Nat'l Ins. Co.</u>, 788 S.W.2d 566, 567 (Tex. 1990) (holding that a breach of the common

law duty of good faith and fair dealing "give[s] rise to a cause of action in tort . . . separate from any

cause of action for breach of contract."). Under Texas law, an insurer may not favor its own

interests over those of an insured. <u>P.G. Bell Co. v. United States Fid. & Guar. Co.</u>, 853 S.W.2d 187,

190 (Tex. Ct. App. 1993). An insurer breaches its duty of good faith and fair dealing if it

"wrongfully cancels an insurance policy without a reasonable basis" and if it "knew or should have

known of that fact." <u>Rice</u>, 324 S.W.3d at 672 (citing <u>Union Bankers Ins. Co. v. Shelton</u>, 889.

S.W.2d 278, 283 (Tex. 1994)).[1]

### A. Discovery Concerning RMIC's Actions Under the Policy

#### I. *Setting Premiums, Establishing Reserves for Expected Claims, Analyzing Claims and Loan Performance*

First Tennessee contends that RMIC has refused to respond to discovery about certain

activities under the Policy which it argues would demonstrate why RMIC decided to rescind

coverage. Specifically, First Tennessee claims that RMIC has not adequately responded to Requests

for Production 3, 5, 6, 19, 21 and 42 and Interrogatories 3, 4, and 5. These discovery requests

pertain to how RMIC set premiums, recorded and reserved funds for expected claims, calculated

expected claims, losses, and loan performance, and handled claims and rescissions under the Policy.

With respect to Request for Production 3, which seeks the manner of setting premiums under

---

[1]   As the District Court determined that it need not decide which state's law applies at
this stage of the proceedings, the District Court declined to dismiss First Tennessee's claims of
breach of the duty of good faith and fair dealing under Counts II and IV even though the cause of
action is only recognized in Texas and not in Tennessee.

the Policy, the parties do not rely on any Texas or Tennessee law for the premise that such information is discoverable.[2]  However, First Tennessee does rely upon <u>Transcap Association, Inc. v. Euler Hermes American Credit Indemnity Co.</u>, 2009 WL 1543857 (N.D.Ill. June 3, 2009), for the premise that a court may "compel documents related to . . . the calculation of Policy premiums." <u>Id.</u> at *4.  The Court finds this reasoning persuasive, as evidence of the calculation of premiums is relevant and is reasonably calculated to lead to the discovery of admissible evidence as to First Tennessee's claims.  Specifically, such information is relevant to whether RMIC had not anticipated the potential risks of its loans and developed financial motivations to place its interests above the interests of its insured in the face of economic difficulty, which is precisely what First Tennessee alleges in its Complaint.  Accordingly, the Court compels RMIC to respond to Request for Production 3.

With respect to Requests for Production 5 and 6, which pertain to RMIC's calculation of claims, losses, and profits before and after the issuance of the Policy, RMIC affirms that it has already produced all responsive documents to these requests.  Although First Tennessee argues that RMIC has only made a limited production that fails to come close to an adequate response to these requests, the Court does not find it appropriate to order RMIC to produce further discovery when it has affirmed that it has produced all responsive documents.  Accordingly, the Court will not compel further discovery as to Requests for Production 5 and 6.  However, RMIC remains under a

---

[2]  RMIC does rely upon Texas Insurance Code Section 3502.101 for the proposition that it was required to file its premium rate with the Texas Department of Insurance and charge all insureds those rates.  However, the Court agrees with First Tennessee that, despite this requirement, the manner in which RMIC sets its premiums as to all insureds may demonstrate whether RMIC expected low levels of claims as First Tennessee asserts and, as such, may have had a motivation to breach the Policy and breach its duties to the insured during adverse economic conditions.

duty to supplement discovery in accordance with Rule 26(e)(1), and if any other portions of this Order regarding the overarching objections would render other documents responsive to Requests for Production 5 and 6, see, infra, Sections (II)(D)(ii) & (iii), RMIC shall produce those documents in accordance with this Order.

With respect to Request for Production 19, which seeks documents demonstrating how RMIC calculated expected claims, expected losses, and performance of loans insured under the Policy, First Tennessee argues that such information is critical to its claims as it is reasonably calculated to lead to the discovery of admissible evidence showing the difference between RMIC's original financial expectations under the Policy with what actually unfolded following the economic downturn. RMIC responds that it has already produced all responsive documents to this request. Accordingly, the Court will not compel RMIC to respond to Request for Production 19. However, First Tennessee argues that RMIC has limited its production by refusing to provide responsive documents outside its claims files. As discussed below, see, infra, Sections (II)(D)(ii) & (iii), RMIC is not permitted to impose limitations on the discovery and must produce all responsive information to the requests as drafted. In the event that any previous production has been limited to claims files or otherwise, RMIC is compelled to produce any supplemental discovery in accordance with this Order.

With respect to Requests for Production 21 and 42, which pertain to RMIC's calculation of reserves, the parties do not rely on any Texas or Tennessee law for the premise that such information is discoverable. First Tennessee relies upon Bernstein v. The Travelers Insurance Company, 447 F. Supp. 2d 1100 (N.D.Cal. 2006), for the proposition that the manner in which the insurer sets reserves shows "what [the insurer] actually knew and thought, and what motives animated its

conduct" and thus are "critical areas of inquiry in bad faith cases" and are "fully fair game for discovery." Id. at 1107.  RMIC responds that reserve policy is established by legislative and administrative bodies and, thus, that "a reserve cannot accurately or fairly be equated with an admission of liability or the value of any particular claim."  Heights at Issaquah Ridge Owners Assoc. v. Steadfast Ins. Co., 2007 WL 4410260, at *3-4 (W.D.Wash. 2007); see also Leski, Inc. v. Federal Ins. Co., 129 F.R.D. 99, 106 (D.N.J. 1989).  Further, RMIC argues that reserves "do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as a claim analysis."  Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 288 (D.D.C. 1986).  Thus, RMIC argues that courts have found discovery regarding the manner of setting reserves to be irrelevant, even in cases of bad-faith claims.  See id.; Fidelity and Dep. Co. of Md. v. McCulloch, 168 F.R.D. 516, 525 (E.D.Pa. 1996).  Upon review, the Court finds the reasoning of Bernstein persuasive, as First Tennessee seeks to demonstrate in its bad faith claims that RMIC did not properly evaluate its risks and, following the economic downturn, operated in a manner that placed its interests above its insured.  Accordingly, the Court compels RMIC to respond to Requests for Production 21 and 42.

With respect to Interrogatories 3, 4, and 5, which pertain to RMIC's experience handling claims and rescissions under the Policy, the parties do not rely upon any Texas or Tennessee law or persuasive authority on the issue.  Upon review, the Court finds that such information is probative of the issue of how RMIC generally administered its duties under the Policy.  Therefore, such discovery is relevant to First Tennessee's claims and is reasonably calculated to lead to the discovery of admissible evidence with respect to how the Policy was administered.  Accordingly, the Court compels RMIC to respond to Interrogatories 3, 4, and 5.

8

### ii. *RMIC's Knowledge of and Experience with the Loans it Insured*

Next, First Tennessee requests that RMIC be compelled to respond to Requests for Production 29, 30, and 38 regarding its knowledge of the risks it decided to insure under the Policy. With respect to Requests for Production 29 and 30, which pertain to the manner in which it or others analyzed or studied stated-income loans, First Tennessee argues that this information is central to the litigation because a large number of loans insured by RMIC under the Policy were stated-income loans in which the borrower's income is not independently verified. First Tennessee posits that RMIC was well aware of the risks it was insuring yet later purported to rescind coverage by claiming it was unaware of those risks. RMIC responds that borrowers were required to provide truthful information and that it relied upon that information to assess its risks. RMIC further argues that Section 2.2 of the Policy states that RMIC is relying on the accuracy of the information submitted by First Tennessee and that Section 2.3 of the Policy permits RMIC to rescind coverage at any time based upon materially false or misleading information. Upon review, the Court finds that Requests for Production 29 and 30 are relevant to First Tennessee's claims of bad faith, as evidence that would demonstrate that RMIC was aware of risks of materially false or misleading stated-income loans may be pertinent in establishing First Tennessee's claims of bad faith. Accordingly, the Court will compel RMIC to respond to Requests for Production 29 and 30.

With respect to Request for Production 38, First Tennessee seeks RMIC's practice and experience providing underwriting to mortgage lenders. First Tennessee argues that this information will demonstrate that "RMIC was fully knowledgeable about the loans it was insuring and the risks they posed, and that RMIC willingly insured those risks." RMIC asserts that First Tennessee's Complaint is incorrect in alleging that RMIC performed contract underwriting services for First

9

Tennessee and contends that it contracted with a separate company, RMIC Corporation, to perform underwriting services. As RMIC has affirmed that it did not perform contract underwriting services for First Tennessee, and First Tennessee has not contested this assertion in its Reply, the Court will not compel RMIC to respond to Request for Production 38.

### iii. The Incontestability Clause

First Tennessee requests that RMIC be compelled to respond to Requests for Production 17 and 18 regarding the Incontestability Clause in Section 2.4 of the Policy, which prevents RMIC from rescinding coverage when First Tennessee or others involved in the loan origination process did not participate in any misrepresentations.

With respect to Request for Production 17, First Tennessee argues that Count I of its Complaint specifically alleges that RMIC breached the Incontestability Clause and that RMIC acted in bad faith by frequently ignoring this restriction on its rights when it rescinded coverage. (Compl. ¶¶ 43, 58, 60, 61). RMIC argues that this request is overly broad as it seeks documents relating to loans whose rescissions of coverage under the Policy are not alleged to be improper as well as documents regarding numerous other mortgage guaranty policies issued by RMIC to third-party lenders. RMIC further asserts that First Tennessee should have adequate discovery from the information regarding the 309 loans at issue in this lawsuit to establish its claims. Upon review, the Court concludes that Request for Production 17 is not overly broad as drafted, as it requests documents concerning RMIC's consideration of the Incontestability Clause when rescinding loans under First Tennessee's Policy. This discovery may lead to admissible evidence on First Tennessee's claims of breach of contract as well as First Tennessee's claims of bad faith. Accordingly, the Court will compel RMIC to respond to Request for Production 17.

10

With respect to Request for Production 18, RMIC has already affirmed that it produced all responsive documents to this request before the instant motion was filed. Accordingly, the Court will not compel further discovery as to Request for Production 18. However, RMIC remains under a duty to supplement discovery in accordance with Rule 26(e)(1), and if any other portions of this Order regarding the overarching objections would render other documents responsive to Request for Production18, see, infra, Sections (II)(D)(ii) & (iii), RMIC shall produce those documents in accordance with this Order.

### B.  Discovery Seeking Information to Show RMIC Rescinded Coverage Solely for Financial Reasons

First Tennessee contends that RMIC has refused to respond to discovery seeking information to show that it rescinded coverage solely for financial reasons. Specifically, First Tennessee argues that RMIC has not responded to Request for Production 39 regarding RMIC's efforts to protect against losses under the Policy and Request for Production 41 regarding RMIC's financial condition.

With respect to Request for Production 39, First Tennessee asserts that this information could lead to discovery of admissible evidence regarding how RMIC managed its financial position, whether it sought reinsurance, and if so, whether it suffered claims denials leading to the rescissions. Upon review, the Court finds that such information regarding RMIC's financial position is relevant to First Tennessee's claims of bad faith, specifically whether RMIC had a reason to place its interests over the interests of its insured following the economic downturn. Accordingly, the Court will compel RMIC to respond to Request for Production 39.

With respect to Request for Production 41 regarding to RMIC's financial condition from January 1, 2005 to the present, First Tennessee argues that documents evidencing RMIC's financial condition before, during, and after the financial meltdown may explain the reasons for RMIC's

11

change in practices towards First Tennessee and its motivations for increasing rescissions.  First Tennessee argues that this discovery is relevant to its claims of bad faith.  RMIC argues that a cause of action for bad faith under Texas law has nothing to do with the purported motivation of the insurer, but instead only whether the insurer knew or should have known that it lacked a reasonable basis for denying a claim.  See State Fire Farm & Cas. Co. v. Woods., 925 F. Supp. 1174, 1177 (E.D.Tex.1996) ("To prevail in a bad faith claim, an insured claiming bad faith must prove that the insurer had no reasonable basis for denying . . . payment of the claim, and that it knew or should have known that fact.").  However, as the District Court has already concluded, Texas's cause of action for bad faith is premised upon the principle that "an insurer may not favor its own interests over those of an insured."  See P.G. Bell, 853 S.W.2d at 190.  First Tennessee's Complaint and theory of the case alleges precisely that RMIC faced financial hardship and improperly denied coverage to avoid further financial harm, regardless of the consequences to its insured.  Accordingly, the Court will compel RMIC to respond to Request for Production 41.

### C.  Discovery Regarding RMIC's Actions Under Other Similar Policies

First Tennessee contends that RMIC should be compelled to respond to Interrogatory 7, which pertains to the issuance of coverage and rescissions of loans under other policies issued by RMIC, and Requests for Production 20, 22, 26, 28, 43, 44, and 47, which pertain to the financial effect of rescinding coverage under these other policies, the reserves for liabilities under these policies, the internal communications and communications with third parties about the policies, and the lawsuits filed against RMIC concerning rescission of coverage.  Upon review, the Court finds that these Interrogatories and Requests for Production regarding other policies are not relevant or likely to lead to the discovery of admissible evidence as to the issues presented in First Tennessee's

claims under the Policy. Although First Tennessee would argue that discovery related to these other policies would show RMIC's overall financial position and its overarching practices in response to the economic downturn, the Court finds that the scope of this requested exceeds the necessary bounds under the Rules. Accordingly, the Court will not compel RMIC to respond to Interrogatory 7 or Requests for Production 20, 22, 26, 28, 43, 44, and 47.

### D. Discovery on Entire Categories of Discovery To Which RMIC Has Objected

#### I. *Communications About the Lawsuit*

First Tennessee contends that RMIC has refused to respond to Request for Production 40, which seeks documents reflecting external and internal communications about the lawsuit, including communications to and from its Board of Directors. RMIC has affirmed that it does not have any internal documents that are responsive to Request for Production 40. Further, RMIC asserts that all external communications that would be responsive are protected by the attorney-client privilege and work product doctrine. Accordingly, the Court will not compel RMIC to respond to Request for Production 40. However, RMIC remains under a duty to supplement discovery in accordance with Rule 26(e)(1), and if any other portions of this Order regarding the overarching objections would render other documents responsive to Request for Production 40, see, infra, Sections (II)(D)(ii) & (iii), RMIC shall produce those documents in accordance with this Order.

#### ii. *Matters Outside RMIC's "Claims Files"*

As an overarching matter, First Tennessee asserts that RMIC has refused to respond to numerous categories of discovery requests that seek information not found in RMIC's claims files. First Tennessee argues that RMIC is imposing an improper and unfounded limitation on discovery. Upon review, the Court finds that RMIC cannot limit its discovery responses to its claims files but

13

must produce all responsive information and documents to First Tennessee's Requests for Production and Interrogatories as drafted. Additionally, in this Order, the Court has not compelled further production to certain discovery requests based upon RMIC's affirmations that it has produced all responsive documents. In the event that RMIC's previous productions to any requests have been limited to claims files, RMIC is compelled to produce any supplemental discovery in accordance with Rule 26(e)(1) and this Order.

### 1. Communications and Witness Statements

First Tennessee requests that RMIC be compelled to produce certain communications and witness statements responsive to Requests for Production 8, 27, and 48. With respect to Request for Production 8, which seeks certain communications between RMIC and First Tennessee in connection with the Policy, and Request for Production 27, which seeks discovery regarding RMIC's communications with third parties regarding the Policy, RMIC has affirmed that it has produced all responsive documents. Accordingly, the Court will not compel RMIC to produce further discovery. However, RMIC remains under a duty to supplement discovery in accordance with Rule 26(e)(1), and if any other portions of this Order regarding the overarching objections would render other documents responsive to Requests for Production 8 and 27, see, supra, Section (II)(D)(ii) &, infra, (II)(D)(iii), RMIC shall produce those documents in accordance with this Order.

With respect to Request for Production 48, which seeks statements obtained from witnesses about First Tennessee, the Policy, the loans, or the matters discussed in the Complaint, First Tennessee argues that this discovery will demonstrate whether RMIC breached the Policy and acted in bad faith in response to the economic downturn. RMIC responds that the requested discovery is irrelevant and overly broad because it pertains to rescissions and claims denials that are not being

challenged as improper or bad faith in this case.  RMIC argues that, with 309 loans at issue in the lawsuit, First Tennessee has sufficient discovery to prove its claims.  First Tennessee responds that RMIC has attempted to limit its production to this request to its claims files and should not be permitted to do so.  Upon review, the Court finds that Request for Production 48, as drafted, is relevant and reasonably calculated to lead to the discovery of admissible evidence as to First Tennessee's claims.  Specifically, the request is narrowly tailored to statements about First Tennessee, the Policy, loans insured under the Policy, and matters discussed in the Complaint. Accordingly, the Court will compel RMIC to respond to Request for Production 48.  Further, RMIC will not be permitted to impose any self-limitations on the scope of the request, see, supra, Section (II)(D)(ii) &, infra, (II)(D)(iii), and shall respond to the request as drafted.

### 2.  Board Materials

First Tennessee requests that RMIC be compelled to produce Board of Directors' materials, including minutes, materials sent or presentations made to the Board, and communications among Board members, in response to Request for Production 45.  RMIC has stated that it has no responsive documents to this request, which First Tennessee has argued is not plausible and is an improper attempt to limit the scope of First Tennessee's request.  As RMIC asserts that it has already produced all responsive documents to Request for Production 45, the Court will not compel further production.  However, if RMIC has self-imposed any of its own limitations on what it deems to be responsive, including an overly narrow reading of First Tennessee's Request for Production or First Tennessee's Complaint, see, supra, Section (II)(D)(ii) &, infra, (II)(D)(iii), RMIC should supplement its production to fully respond to Request for Production 45 as propounded by First Tennessee.

### 3.  *Procedures for Investigating Claims, Reviewing Loan Performance, and Making Rescissions Under the Policy*

First Tennessee requests that RMIC be compelled to respond to Requests for Production 15, 16, and 31 regarding the guidance, policies, and procedures RMIC provides to its employees and to third parties for investigating claims, reviewing loan performance, and gathering information about loans insured under the Policy.  RMIC has stated that it will respond but will only produce materials regarding specific loans First Tennessee has identified.  First Tennessee asserts that this limitation is arbitrary and should be rejected because a corporation would not typically enact policies and procedures for direct subsets of specific loans as to one lender or one policy.

Upon review, the Court finds that Requests for Production 15, 16, and 31 are relevant to the overarching training, policies and procedures utilized at RMIC in its administration of its policies, including the Policy at issue in this case.  The Court finds First Tennessee's argument persuasive that the information responsive to this request would likely not pertain to a specific loan or a specific lender, but instead would be general information utilized in RMIC's business.  Such information is vital so that First Tennessee can assess the policies and procedures RMIC used for assessing loans and coverage under the Policy.  Accordingly, the Court compels RMIC to respond fully to Requests for Production 15, 16 and 31.

### 4. *Investigating and Auditing of Insured Loans*

First Tennessee requests that RMIC be compelled to respond to Requests for Production 9, 10, 13, and 14 regarding the following topics: (1) how RMIC investigated the performance of the loans insured under the Policy, (2) audits, quality assessments, and quality control reviews of loans insured under the Policy; (3) documents from third parties that investigated loans for which RMIC rescinded coverage; (4) and other loans which First Tennessee identified in dispute.  Upon review,

16

the Court finds that Requests for Production 9, 10, 13 and 14 pertain to RMIC's general business administration and are relevant and reasonably calculated to lead to the discovery of admissible evidence regarding First Tennessee's claims under the Policy.   Accordingly, the Court will compel RMIC to respond to Requests for Production 9, 10, 13, and 14.  Further, RMIC will not be permitted to impose any self-limitations on the scope of the request, see, supra, Section (II)(D)(ii) &, infra, (II)(D)(iii), and shall respond to the requests as drafted.

### 5.  *Coverage Rescissions and Claim Denials Under the Policy*

First Tennessee requests that RMIC be compelled to respond to Requests for Production 11, 12, and 24 and Interrogatories 4 and 5 concerning its rescissions and claims denials under the Policy and its practice of rescinding coverage before claims for a loss are submitted.  Upon review, the Court finds that Requests for Production 11, 12, and 24 and Interrogatories 4 and 5 are relevant and likely to lead to the discovery of admissible evidence regarding First Tennessee's claims, particularly its claims of bad faith. Accordingly, the Court will compel RMIC to respond to Requests for Production 11, 12, and 24 and Interrogatories 4 and 5.[3]

### 6.  *Organizational Charts*

First Tennessee requests that RMIC be compelled to respond to Request for Production 23 regarding employees with involvement or knowledge of the lawsuit.  RMIC has argued that they should only be required to respond to the extent that the information regards loans First Tennessee identified.  Upon review, Rules 26 explicitly permits for discovery regarding the identity and locations or persons who know of any discoverable matter.   See Fed. R. Civ. P. 26(b)(1).

---

[3] Additionally, the Court has already compelled First Tennessee to respond to Interrogatories 4 and 5 on other grounds.  See Section (II)(A)(I).

Accordingly, the Court finds that Request for Production 23 is relevant and likely to lead to the discovery of admissible evidence regarding the individuals with knowledge of the matters  the instant case as well as the organizational structure of key individuals at RMIC.  Accordingly, the Court will compel RMIC to respond to Request for Production 23.

### iii.  E-mails

First Tennessee asserts that RMIC has taken an overarching position that it need not produce e-mails in discovery unless they appear in RMIC's "claim files."  RMIC asserts that it has not limited discovery in such a manner.   Upon review, the Court concludes that the Federal Rules do not permit any such limitations upon discovery.  Accordingly, RMIC shall be required to produce e-mails whether or not they are part of RMIC's claim files.  Additionally, in this Order, the Court has not compelled further production to certain discovery requests based upon RMIC's affirmation that it has produced all responsive documents.  In the event that any previous production of e-mails has been limited to claims files, RMIC is compelled to produce any supplemental discovery in accordance with this Order.

### E.  Documents RMIC Agreed to Produce

Finally, First Tennessee asserts that RMIC has not provided certain discovery it has agreed to produce.  First Tennessee states that RMIC did make a recent additional production, which may contain all the documents RMIC agreed to produce; however, First Tennessee requests that RMIC be compelled to provide all documents it has previously agreed to produce to the extent that it has not already done so.  Upon review, the Court finds that this request is premature, particularly as it is uncertain whether or not RMIC has not already produced all responsive documents that it has agreed to produce.  Accordingly, the Court will not compel RMIC to produce these documents.

However, the Court expects that RMIC and First Tennessee will continue to conduct good faith discovery in accordance with the Rules and provide all responsive discovery in a timely fashion.

### III.  Conclusion

For the reasons set forth herein, First Tennessee's Motion to Compel Responses to Interrogatories and Document Requests is hereby GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED** this 5th day of July, 2011.

<u>s/ Charmiane G. Claxton</u>
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE